625 So.2d 885 (1993)
Clarence McKinney, Petitioner,
v.
Honorable Theron A. YAWN, Jr., Respondent.
No. 93-1528.
District Court of Appeal of Florida, First District.
October 4, 1993.
Rehearing Denied November 19, 1993.
*886 Robert A. Rush, Gainesville, for petitioner.
Robert A. Butterworth, Atty. Gen. and Charlie McCoy, Asst. Atty. Gen., for respondent.
ZEHMER, Chief Judge.
Petitioner, Clarence McKinney, seeks a writ of prohibition pursuant to rule 3.191, Florida Rules of Criminal Procedure, on grounds that his right to speedy trial was violated and that he is entitled to be discharged on the criminal charges pending against him in circuit court. We have jurisdiction in this proceeding to review the circuit court's order denying discharge. Sherrod v. Franza, 427 So.2d 161 (Fla. 1983). We hold, for the reasons stated below, that petitioner has failed to show he is entitled to issuance of the writ.
In establishing that a defendant may test the jurisdiction of the trial court to proceed with the trial of pending criminal charges if the defendant is entitled to discharge pursuant to rule 3.191 for a speedy trial violation, the supreme court set forth two essential requirements in Sherrod. First, prohibition "will not lie until the defendant has first made a motion for discharge to the trial court and this motion has been denied." 427 So.2d at 164. We construe this requirement to include making the trial court aware of the motion for discharge and obtaining a ruling that denies the motion. Second, "Any factual question should be determined at this hearing, and upon collateral attack by prohibition the findings of fact made by the trial court become conclusive." 427 So.2d at 164. It is evident that this prohibition proceeding is only appropriate to review the legal sufficiency of the order denying discharge; it is not an appropriate proceeding for determining disputed issues of fact or to review the sufficiency of the evidence to support the trial court's findings on which the order denying discharge is based.

I.
The relevant history and facts pertinent to this matter are found in the parties' appendices. McKinney was charged with three criminal offenses: robbery with a deadly weapon, burglary with assault while armed, and felony murder. He was arrested on April 28, 1992, subsequently indicted by the grand jury for Bradford County, and has remained continuously in custody since that *887 date. McKinney, either by motion or by joining in motions filed by codefendant Smith, sought and obtained continuances of trials set in August, September, and November, 1992, and January, 1993. Each continuance was unopposed by the prosecution and each was based, at least in part, on the defendants being unprepared to go to trial. These requests for continuance largely resulted from the state's failure to timely perform its discovery obligations. None of the orders granting a continuance ruled that the continuance would be charged against the state for speedy trial purposes.
Trial of the charges was rescheduled to commence on April 5, 1993. In late March 1993 (from the papers before us it is not entirely clear whether the date was actually March 25, 26, or 29), McKinney served and filed a motion for discharge pursuant to rule 3.191, a motion to compel discovery from the state, and a motion to continue the April 5 trial because of the state's untimely response to discovery requests and orders. McKinney's motion for discharge recited his arrest and incarceration since April 28, 1992, alleged more than 175 days had passed without trial, and contended the trial had not been held because the state was not ready although it had repeatedly announced it was ready. This last allegation was based on the state's having continuously furnished names of new witnesses and information concerning new evidence between March 2 and March 16, 1993. McKinney's motion for continuance was based on the state's providing discovery so late that it precluded him from being ready for trial.
A hearing on pending motions filed by McKinney and codefendant Smith was held on April 1, 1993. Although the record is not entirely clear on this point, McKinney's counsel represented at oral argument that the hearing was set by the court on its own initiative to clear up pending motions before the trial commenced. During the hearing the parties and the court addressed various pending motions filed by both defendants, but there was no direct discussion regarding McKinney's pending motion for discharge. Neither the state nor McKinney's counsel brought that motion to the court's attention during the hearing. However, during a discussion by the court with codefendant Smith and his counsel about Smith's pending demand for speedy trial (McKinney had not filed a specific request for speedy trial), it was determined that Smith was waiving his right to speedy trial, and the following exchange took place:
THE COURT: What does this do to the speedy trial rule as far as Mr. McKinney is concerned, if anything?
MR. CERVONE [Assistant State Attorney]: Nothing. Mr. McKinney has previously waived. He has never filed a specific demand.
Later in the hearing, the following occurred:
[THE COURT:] Now, if I proceed towards granting Mr. Rush's [McKinney's attorney] motion for continuance, you think you can spend that time getting your case ready for trial, or are you going to have to devote it to preparing motions?
MR. CERVONE: We do not anticipate any likelihood of developing more things. We think that what we've developed will be turned over to them through the FDLE in fairly short order. I had hoped that we would have it ready in time for March, and we obviously couldn't make that, but I think that what the Court is saying could be done.
MR. RUSH: Your Honor, from my standpoint, as long as the State gives me this evidence fairly quickly  they said they can get it in a day, but I'd certainly give them at least a week. Based upon that, that's where I'm going to start from, to see if there's anything additional. I want to get this case tried in May. My client wants to get it tried. [W]e tried to get ready for April. And so if the Court would at least give the State a time limit that they know they have to meet, then I'm sure that we'll be able to meet the trial schedule in May.
THE COURT: All right. Let's see if we can work that in here. This is going to be in the form of an order granting Mr. Rush's motion to continue the case, without objection by the State. And in keeping with usual practice, I'll ask you to draw the proposed order, Mr. Rush.
*888 MR. RUSH: Yes, Your Honor.
THE COURT: All right. It will recite, of course, that without objection, that your motion be granted. And it will contain these provisions: that the defendant, McKinney (sic), waives his right to speedy trial  and consents to the continuance, Mr. Replogle [Smith's counsel]?
MR. RUSH: That would be Smith, Your Honor. That's his client.
* * * * * *
THE COURT: All right, sir. Both defendants consent to the continuance, and that Defendant Smith waives his speedy trial rights... .
At no time did McKinney's counsel inform the court or the state attorney, or otherwise bring to the court's attention, that McKinney contended that he had not previously waived the speedy trial requirement or that, notwithstanding his motion for continuance under consideration by the court, he was persisting in his recently filed motion for discharge for the asserted violation of the speedy trial rule. Thus, finding that McKinney had agreed to it, the trial court granted McKinney's request for continuance from the April 5 trial date and the trial was rescheduled for May 10. At no point during the hearing did the trial court take up McKinney's motion for discharge and rule on it. A written order was entered on April 7 that contains all of the provisions specified by the trial court at the hearing, including setting the case for trial on May 10; but that order did not rule on, and thus did not deny, McKinney's motion for discharge.
On May 7, McKinney served a "Motion For Order of Discharge." This motion referred to the motion for discharge filed on "March 25, 1993," and asserted that the burden was on the state to bring the first motion on for hearing within five days and thereafter have a trial within 10 days. Because the state had not done so, the motion alleged, the trial court had lost "jurisdiction to conduct the trial of these charges." The motion was orally denied at a hearing held on May 10. No written order of denial has been entered.

II.
McKinney now petitions this court for a writ of prohibition pursuant to rule 3.191(p) and Sherrod v. Franza to review the denial of his motions for discharge. McKinney relies on two basic legal propositions to support his petition. The first postulates that where discovery is untimely furnished to the defense so that the defense will not be able to make use of it in preparation for trial, the court may properly continue the case on the defendant's request, charge the continuance to the state, and thereafter grant the defendant a discharge based on a speedy trial violation. See George v. Trettis, 500 So.2d 588 (Fla. 2d DCA 1986); State v. Williams, 497 So.2d 730 (Fla. 2d DCA 1986); State v. Del Gaudio, 445 So.2d 605 (Fla. 3d DCA), rev. denied, 453 So.2d 45 (Fla. 1984).[1]See also Lasker v. Parker, 513 So.2d 1374 (Fla. 2d DCA 1987);[2]State ex rel. Wright v. Yawn, 320 So.2d 880 (Fla. 1st DCA 1975), cert. denied, 334 So.2d 609 (Fla. 1976). Second, McKinney relies on cases construing Florida Rule of Criminal Procedure 3.191(p)(3) (formerly appearing at subdivisions (i)(4) and (i)(3)) which hold that where the state does not either hold a hearing on a motion for discharge within 5 days or commence the trial within 15 days, the defendant is entitled to discharge. See Ariza v. Cycmanick, 548 So.2d 304 (Fla. 5th DCA 1989); Climpson v. State, 528 So.2d 1296 (Fla. 1st DCA 1988); Lenard v. Moxley, 497 So.2d 973 (Fla. 5th DCA 1986).
The state responds to the petition with a "shot gun" argument that can be summarized as follows. The state contends that defense counsel has acted inconsistently with the speedy trial rule by repeatedly agreeing to continuances, and these inconsistent actions *889 bind McKinney, citing Pannier v. State, 582 So.2d 1240 (Fla. 3d DCA), rev. denied, 593 So.2d 1052 (Fla. 1991). The state asserts that State v. Martinez, 586 So.2d 1285 (Fla. 3d DCA 1991) is very similar to the case at bar. It also relies on State v. Brown, 527 So.2d 209 (Fla. 3d DCA), rev. denied, 534 So.2d 398 (Fla. 1988), analogizing the facts in this case to those in Brown where the appellate court condemned the defense tactic of using an immaterial "glitch" in the prosecution in order to secure dismissal by discharge rather than obtaining the speedy trial that the defendant obviously did not want. The state argues that there were no discovery violations in McKinney's case such as a failure to disclose, but only some delay in the state's investigation; and while the delay is attributable to the state, no prejudice has resulted to McKinney. The state's delay in putting its case together did not impair McKinney's ability to prepare his defense, the state contends, and unanticipated events contributed to the late provision of discovery, as two critical witnesses first came forward in March and April, 1993, and this justified an extension of the time limit prescribed by the speedy trial rule.
The state cites Godwin v. State, 580 So.2d 176 (Fla. 1st DCA), rev. denied, 584 So.2d 998 (Fla. 1991), wherein the defendant sought discharge despite moving for a continuance, and the court held that a defendant in this circumstance must show both an actual violation of discovery rules and that the violation prevented use of the evidence in preparation of the defense before expiration of speedy trial limits. In the instant case, the state argues, it has never violated the discovery rules and McKinney cannot show that the delay in providing discovery prevented his use of evidence in his defense. The state asserts that the defense made tactical decisions that negated any harm from the state's admittedly slow provision of discovery; instead of demanding a speedy trial or moving for discharge pursuant to rule 3.191, McKinney repeatedly sought continuances, even in March 1993. As a result of the ongoing investigation, the state concludes, the evidence of McKinney's guilt is much stronger.
According to the state, McKinney offers no authority for the proposition that the state had to set a concurrent and superfluous hearing on or about April 1 to consider the motion for discharge. Rather, the state argues, McKinney had the burden to show entitlement to discharge but failed to even argue for it at the April 1 hearing. Thus, the state reasonably inferred from McKinney's conduct that he was abandoning his demand for discharge, and speedy trial is waived when both sides agree or stipulate to a continuance, as was done at the April 1 hearing. State v. Kelley, 322 So.2d 581 (Fla. 1st DCA 1975).

III.
In reaching our decision, we first note that no order, either oral or written, has been entered denying McKinney's first motion for discharge filed in March. Since the trial court has not explicitly ruled on that motion, we look to the court's ruling on the second motion for discharge that was filed on May 7. For the purposes of this proceeding, we will assume that the first motion and grounds recited therein was incorporated in the second motion for discharge.
After extensive study of the law and the voluminous material included in appendices, we hold that McKinney has failed to show that the trial court was required to grant his motion for discharge pursuant to rule 3.191(p) so as to deprive that court of jurisdiction to proceed with a trial. There are no explicit findings by the trial court showing that the continuances sought by McKinney were in fact chargeable to the state due to discovery violations. Nor were any such findings included in any orders granting McKinney continuances. There are no findings of fact supporting the conclusion that McKinney was not brought to trial within 175 days for reasons other than the actions and "fault" of the defendant. In this prohibition proceeding, we are not authorized to make or imply findings of fact from the mass of material filed in McKinney's appendices, especially if such findings would be contrary to the trial court's implied ruling that the failure to bring McKinney to trial was due to his repeated requests for continuances. Absent *890 findings of fact by the trial court that such continuances were not caused by McKinney but were attributable to the state and should be charged to the state, it is inappropriate for this court to make initial findings on such matters in this prohibition proceeding. Sherrod v. Franza. Whether the record contains sufficient evidence to support findings of fact that the state is responsible for the continuances he sought is not reviewable by writ of prohibition but must be reviewed on plenary appeal in the pending criminal case.
We recognize that, under rule 3.191, once the defendant files a motion for discharge, it is the prosecution's burden to schedule a hearing within five days and come forward with a showing that the defendant is not entitled to discharge. Baxter v. Downey, 581 So.2d 596 (Fla. 2d DCA 1991).[3] We also recognize that, in response to the motion for discharge, the defendant can be brought to trial within 15 days even if the past delay is chargeable to the state, as rule 3.191(p)(3) allows 5 days to have a hearing and affords 10 days thereafter to bring the defendant to trial. But we also note that subpart (3) of the rule explicitly provides that "[a] defendant not brought to trial within the 10-day period through no fault of the defendant, on motion of the defendant or the court, shall be forever discharged from the crime" (emphasis added). On the record before us, we are unable to say that the trial court made findings that show the continuances granted at McKinney's request were the fault of the state rather than McKinney.
Resolution of the issue presented by this petition for prohibition turns on whether, as a factual matter, the continuance of the trial beyond the speedy trial limit, entered pursuant to McKinney's motion for continuance, was nevertheless made necessary by the state's conduct in providing late discovery leaving McKinney unable to be ready for trial on the assigned dates. More specifically, does the record establish that the continuance granted by the court pursuant to McKinney's request at the April 1 hearing must be attributed to the state so as not to toll the speedy trial time? As the trial court made no explicit findings of fact on this matter, we must accept as true all facts permissibly inferred from the materials before us in a light most favorable to the state as the prevailing party on the motion for discharge and treat those facts as conclusively established for purposes of this prohibition proceeding. Sherrod v. Franza.
The April 1 hearing was set to hear and dispose of pending motions, and apparently being within 5 days of McKinney's filing of the motion for discharge, was legally sufficient to satisfy the first requirement of subpart (3). Whether McKinney was not brought to trial within 10 days of the April 1 hearing "through no fault of the defendant" is, however, a matter of considerable dispute that had to be resolved by the trial court. The failure of McKinney's counsel to inform the court at the April 1 hearing that he disputed the state's representation that McKinney had "previously waived" the speedy trial requirement, and the trial court's stated understanding that McKinney had consented to the continuance of the trial set for April 5 (a date within the critical 15-day period), considered in context with the failure of McKinney's counsel to even mention his motion for discharge at the April 1 hearing set by the court to consider all pending motions, undoubtedly led the trial judge to conclude, even if erroneously, that McKinney was not now insisting upon discharge for speedy trial violation. Because McKinney did not make the trial court aware that his motion for continuance was made subject to his motion for discharge and that McKinney was still insisting on that motion, the trial court proceeded to reset a trial date that was not within 10 days of the hearing. Based on these facts, the expiration of the 10 day "window of recapture" provided to the state *891 by rule 3.191(p)(3) may be attributable to the "fault" of the defense and not the state, or at least the trial court could have so found in denying the May 7 motion for discharge. Therefore, we are unable to say that McKinney has established by undisputed evidence in this proceeding that he was entitled to a discharge for violation of the speedy trial rule and that the denial of his motion for discharge was error as a matter of law.
We are aware that in State v. Ansley, 349 So.2d 837 (Fla. 1st DCA 1977), cert. denied, 359 So.2d 1220 (Fla. 1978), this court concluded that the defendant had not waived the speedy trial requirement by standing silent when the trial court announced a trial date beyond the speedy trial time. Accordingly, in holding that the defendant was entitled to discharge for speedy trial violation, we pointed out, among other things, that
"The record does not affirmatively show that the defendant or her attorney agreed to the date in question. For this reason, the motion for discharge is granted as to count three of the information."
349 So.2d at 838. We explicitly distinguished certain cases wherein:
Waiver has been found without the required writing where defense counsel orally stipulated to the delay in open court and where same was preserved for the record by certified transcript of the proceedings; or where there was either a passive or active acknowledgment on the part of the defense that a stipulation (in court or out, oral or written) had been entered into by which the parties agreed that the trial would be set beyond the speedy trial period; or where there was an acknowledgment by the court or one of the parties of a speedy trial issue followed by the defense's acquiescence in a trial date set beyond the speedy trial period. State v. Kelley, 322 So.2d 581 (Fla. 1st DCA 1975); Stuart v. State 339 So.2d 659 (Fla. 3d DCA 1976); State v. Earnest, 265 So.2d 397 (Fla. 1st DCA 1972); and Eastwood v. Hall, 258 So.2d 269 (Fla. 2nd DCA 1972). However, none of these circumstances has occurred in the instant case.
349 So.2d at 839. This discussion in Ansley clearly indicates that a defendant's conduct before the court indicating agreement with the granting of a continuance will not ordinarily be charged against the state. Moreover, our decision in Ansley was rendered several years before the 1984 amendment to rule 3.191 that substantially circumscribed the concept of discharge as a matter of right for violation of the speedy trial rule and substituted the "window of recapture" scheme provided to the state in subpart 3.191(p)(3) of the rule that also included the requirement that the defendant be without fault.
We also distinguish Lobik v. State, 506 So.2d 1077 (Fla. 2d DCA 1987), a case factually more similar to the one now under review. Lobik moved for a continuance on grounds that a key witness had changed his testimony in a material way and that other state witnesses were "inexplicably unavailable" for trial on the scheduled date. The trial court granted the continuance, explicitly found a waiver of speedy trial and, while "some discussion was held concerning rescheduling the trial within the initial speedy trial time," rescheduled the trial beyond the speedy trial date due to a congested court calendar. Before setting this date, "the state again indicated that the continuance was at Lobik's request and, therefore, speedy trial was waived," and the trial court agreed. 506 So.2d at 1078. At this point, defense counsel stood mute. Based on these circumstances, the second district ruled that a continuance was not necessarily chargeable to the party moving for continuance and concluded that the continuance, having been made necessary by the state's conduct in changing critical witnesses, should have been charged to the state, thus entitling the defendant to discharge. Id. The district court's opinion expressly notes, however, that defendant "moved for a continuance specifically not waiving speedy trial" (emphasis added). Id.
We consider Lobik distinguishable because, first of all, review in that case was by plenary appeal after judgment of conviction based on the entire record; it was not a prohibition proceeding. Secondly, the trial court was made aware of Lobik's insistence on his right to be discharged for speedy trial violation at the time the court ruled on the *892 motion for continuance, and based its ruling on a finding of waiver of the right to speedy trial when clearly the defendant had expressly preserved that right in his motion for continuance. By way of contrast, in the present case, McKinney's motion for continuance filed contemporaneously with his motion for discharge did not recite that he was "specifically not waiving speedy trial" as in Lobik; instead, McKinney took inconsistent positions by telling the court that he would be ready for and was insisting upon trial in May. Thus, it is reasonable to infer that had the trial court been made aware of McKinney's continued insistence on the right to discharge, the court undoubtedly would not have continued the trial calendared for April 5. Nor is it likely that the state would have consented to the continuance if that meant that McKinney would be subject to discharge.[4]
To summarize, both Lobik and Ansley recognize that while a defendant can stand mute as the court sets a trial beyond the speedy trial date pursuant to the defendant's request for continuance, the defendant can do so only if the speedy trial issue has been brought to the court's attention at the time the continuance is granted. The speedy trial rule is designed to ensure that a defendant can be quickly brought to trial if and when the defendant so demands; it is not intended to create procedural traps by which the defense is able to defeat the state's right to trial by taking inconsistent positions and failing to advise the court of its intention to pursue its speedy trial rights when seeking a continuance, as this course of conduct can be misleading to the trial court as to the defendant's true intentions.
Under the circumstances shown in this case, as trial court's order does not contain explicit findings to the contrary, we conclude that the trial court's failure to set McKinney's trial within the 10-day "window of recapture" was most likely attributable to the "fault" of the defendant and not the state within the meaning of rule 3.191(p)(3), thereby justifying the denial of discharge for a speedy trial violation.
By this decision we do not intend to approve the state's conduct in providing late discovery. We only hold that this proceeding in prohibition is not an appropriate remedy under the circumstances shown. Whether the discovery violation issues asserted by McKinney actually occurred in a manner that should cause the resulting delays to be charged against the state for speedy trial purposes is reviewable only on plenary appeal from a judgment of conviction.
The petition for writ of prohibition is DENIED.
WOLF and KAHN, JJ., concur.
NOTES
[1] McKinney cites to Del Gaudio to support his argument but fails to mention the relevant holding in Del Gaudio has been limited. See Colby v. McNeill, 595 So.2d 115, 117-18 (Fla. 3d DCA 1992). See also State v. Koch, 605 So.2d 519, 522-23 (Fla. 3d DCA 1992) (Schwartz, C.J., dissenting).
[2] McKinney's petition also fails to mention that Lasker has been limited "to the very unusual facts of that case." Baxter v. Downey, 581 So.2d 596, 599 (Fla. 2d DCA 1991).
[3] Technically, under the 1992 rule amendment, it appears that McKinney should have filed a "notice of expiration of speedy trial time" under rule 3.191(p)(2), rather than a motion for discharge. See In re Amendments to the Florida Rules of Criminal Procedure, 606 So.2d 227, 272 (Fla. 1992). It does not appear that either the state or the trial court was prejudiced by this error, however, and we therefore do not find that it serves as a barrier to the relief McKinney seeks from this court.
[4] McKinney's argument that the state's discovery violations prevented him from being ready for trial does not necessarily implicate a speedy trial violation, as other sanctions remain available to deal with that issue during trial, including limiting the state's right to use such evidence.