513 So.2d 1374 (1987)
Christine M. LASKER, Petitioner,
v.
The Honorable James S. PARKER and the Honorable John R. Blue, Respondents.
Donna J. Morse, Petitioner,
v.
The Honorable James S. Parker, Circuit Judge, Twelfth Judicial Circuit, Respondent.
Nos. 87-1167, 87-1213.
District Court of Appeal of Florida, Second District.
October 23, 1987.
Jan Andrew Press, Clearwater, for petitioner Lasker.
Robert G. Lyons of Icard, Merrill, Cullis, Timm & Furen, P.A., Sarasota, for petitioner Morse.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Katherine V. Blanco and Davis G. Anderson, Jr., Asst. Attys. Gen., Tampa, for respondents.
PER CURIAM.
Christine Lasker and Donna Morse have petitioned this court for writs of prohibition alleging that the respondent judges have proceeded in violation of rule 3.191, Florida Rules of Criminal Procedure, with the trial of felony charges. For the reasons stated below we are compelled to grant the petitions.
*1375 Lasker and Morse were arrested on cocaine charges on October 24, 1985, but were released shortly thereafter. For reasons not readily apparent from the record, formal charges were not filed until March 24, 1987 (Lasker), and March 25, 1987 (Morse). Arraignment was scheduled for April 10, 1987. On April 8 (Lasker) and April 10 (Morse), defense counsel filed notices of appearance, demands for discovery, and motions for discharge based on speedy trial grounds. There is no indication that either Lasker or Morse has been unavailable for trial.
The facts from that point on are not a subject of complete agreement. It appears that the prosecutor communicated with Lasker's counsel by telephone on April 9 and stated that the case would be called for trial on April 13. It further appears that because the trial date was represented by the prosecutor to have been scheduled for only five days after the filing of the motion for discharge, he volunteered the opinion that no hearing on that motion was necessary. Lasker's counsel objected to any refusal to set a hearing and "communicated to the caller his obvious unpreparedness for trial" since discovery requests had not yet been fulfilled. On April 13, 1987, the prosecutor wrote to the trial judge advising that Lasker's counsel was "abandoning his procedural [speedy trial] claim" and was intending to request a continuance of Lasker's trial. On April 20 Lasker countered with a written objection to this letter; Lasker's trial was nevertheless rescheduled for June.
The prosecutor also telephoned Morse's attorney on April 13 and advised him that a hearing on the motion for discharge was not necessary because the court "would schedule the case for trial within the next several days." Morse's trial, however, was not set until June 15, 1987, and was to be preceded by a June 10 hearing scheduled for pending motions, presumably including the motion for discharge. Without consulting counsel the court prepared its schedule on April 14, on which date defense counsel was out of his office and unavailable. On April 15, believing trial was set for that day, Morse's counsel communicated with the prosecutor, expressed his unpreparedness and objected to the lack of notice. Based on this telephone call the prosecutor wrote to the judge that defense counsel "stated that it was not his intention in filing the motion [for discharge] that a trial start within 10 days" and that he would abandon his argument. Morse's counsel responded in writing to the judge stating that the prosecutor's letter did not accurately reflect the conversation between them. This letter had no effect.
The first question which surfaces in this matter is whether a hearing on a facially sufficient motion for discharge is absolutely essential. Under the speedy trial rule as it existed prior to 1984, a defendant who had not contributed to the delay of his trial was entitled to outright discharge once the 180-day deadline expired. Under the pre-1984 rule, unless the state was prepared to concede the issue, a hearing would have been conducted to determine whether the facts justified the defendant's discharge. The rule was amended, however, to allow the state an opportunity to bring the defendant to trial within fifteen days of the date of filing of the motion for discharge. Gordon v. Leffler, 495 So.2d 200 (Fla. 5th DCA 1986), rev. denied, 503 So.2d 327 (Fla. 1987); but see Ricci v. Parker, No. 87-1954 (Fla. 2d DCA September 4, 1987) [12 F.L.W. 2143]. The rule in its present form provides that:
No later than 5 days from the date of the filing of a motion for discharge, the court shall hold a hearing on the motion, and unless the court finds that one of the reasons set forth in section (d)(3) exists, shall order that the defendant be brought to trial within 10 days. If the defendant is not brought to trial within the 10 day period through no fault of the defendant, the defendant shall be forever discharged from the crime. (emphasis supplied).
Fla.R.Crim.P. 3.191(i)(4). By operation of the rule as it now exists, even if the state were to agree that a defendant has not waived speedy trial, and no exceptional event has occurred to extend the deadline for trial, the defendant cannot be discharged *1376 if the trial can be promptly commenced. Thus, because the revised rule is intended to serve as a "safety valve" for the state's benefit, the state now has the burden of arranging for a prompt hearing when a motion for discharge has been filed. Apolinari v. Ulmer, 483 So.2d 75 (Fla. 2d DCA), rev. denied, 492 So.2d 1335 (Fla. 1986). An obvious corollary to the state's burden is its ability, if it chooses, to convey to the trial court, in lieu of a formal hearing, its concession that the motion for discharge is well taken and its agreement to have the trial scheduled within the 10 day period provided by the rule. In that situation the defendant would be hard-pressed to demonstrate prejudice stemming solely from the court's failure to conduct a hearing. This case, unfortunately, exemplifies the danger in placing reliance upon shortcuts. We find that the failure to conduct a hearing in connection with the motions for discharge adversely affected the petitioners' right to a speedy trial.
Under the peculiar facts of this case we are not persuaded that there was a waiver of speedy trial regardless of what counsel may have said to the prosecutor during the telephone conversations. This is not to say that a waiver of speedy trial must always come directly from the defendant; it may be undertaken by counsel. Smith v. State, 482 So.2d 521 (Fla. 2d DCA 1986). There must, however, exist some record to support a finding that counsel did intend a waiver or that he acquiesced in a trial date beyond the speedy trial limit. See, e.g., Saunders v. State, 436 So.2d 166 (Fla. 2d DCA 1983). A state attorney's "understanding" that a defense continuance was requested has been deemed to be insufficient evidence of a waiver. Black v. State, 468 So.2d 457 (Fla. 3d DCA 1985). Analogously, rule 3.191(d)(2), which provides for extension of the time limits for trial, specifies that any such extension must be procured by a written stipulation or by an announcement in open court. Martin v. State, 449 So.2d 939 (Fla. 4th DCA), rev. denied, 458 So.2d 274 (Fla. 1984). In the present case the trial court apparently accepted the state's unilateral representation that the petitioners, without comment from them, intended to withdraw their motions for discharge. In effect, the state's attorney, no matter how innocently, constructed the circumstances calling for the result we reach. Our view finds adequate support in the fact that counsel for Lasker and Morse promptly objected to the prosecutors' representations. At that juncture, it was incumbent upon the trial court to conduct a hearing to determine if the motions for discharge were validly asserted or whether, in fact, a waiver of speedy trial had occurred.
The state draws our attention to the petitioners' eleventh hour demand for discovery and to counsel's objections to the first suggested trial date based on a lack of preparedness. The state contends that a motion for discharge is itself a representation that the defendant is ready for trial and if he is not, the demand for discharge is a nullity. Thus, says the state, the instant matter is distinguishable from George v. Trettis, 500 So.2d 588 (Fla. 2d DCA 1986), which involved a timely demand for discovery with belated compliance by the state. This argument fails.
Under rules 3.191(a)(2) and 3.191(c) an accused may accelerate the time limits for trial by filing a written demand with the state and with the court. That demand must be asserted in good faith by a defendant who has diligently investigated his case and who is genuinely prepared to go to trial in no more than five days. Fla.R. Crim.P. 3.191(c). Otherwise the demand is ineffective and failure to honor it does not entitle the defendant to discharge. Darby v. State, 463 So.2d 496 (Fla. 1st DCA 1985), aff'd., 482 So.2d 1368 (Fla. 1986). Where, however, a demand for speedy trial, unlike a motion for discharge, represents an affirmative effort on behalf of the defendant to avail himself of additional, contingent rights under the rule, such defendant must fulfill the concomitant, reciprocal responsibility to be prepared for trial. If, by contrast, the defendant has not filed a demand and the speedy trial time has expired, the responsibility to be ready for trial evaporates. Under the old rule, where expiration of time was all that was required to *1377 insure discharge, the relevance of the defendant's level of preparedness at the time he moved for discharge was minimal. Because the rule no longer permits automatic discharge, however, the filing and timing of a motion for discharge now may have a strategic significance. The defendant by filing such a motion is on notice that his trial is imminent with the result that the distinction between a motion for discharge and a demand for speedy trial has become blurred. If the defendant is not ready to go to trial at the end of 175 days, a motion for discharge could reflect bad faith. If on the other hand he can successfully attribute his unpreparedness to the inactivity of the state, as is contended by Lasker and Morse, achieving the benefit of the state's inattentiveness would be ill-served by not proceeding with a motion for discharge.
In the matter before us there is little to indicate that Lasker and Morse were prepared to go to trial immediately, a fact which the state emphasizes. The state was not compelled to furnish discovery until it was requested. The rules of criminal procedure, however, do not authorize discovery until after the filing of an indictment or information. Fla.R.Crim.P. 3.220(a)(1). The state's tardiness in filing formal charges may have placed Lasker and Morse in circumstances forcing them to give up one right in order to gain another. Trettis involved post-information foot-dragging such that the defendant could not prepare his case. We are now concerned with the possibility that a causal connection could exist between a lack of preparation on the part of Lasker and Morse in the seventeen months between their arrest and the state's decision to file formal charges. Recognizing the potential for abuse in such situations, this court has held that a court may continue a case beyond the speedy trial date at the state's expense, even if the logical result of such continuance is to engineer the defendant's discharge. State v. Williams, 497 So.2d 730 (Fla. 2d DCA 1986). Had the Lasker-Morse motions for discharge been heard, the state might have persuaded the court that discovery problems justified a waiver or an extension of speedy trial. On the other hand, Lasker and Morse may have prevailed and successfully obtained a continuance, as in Williams, or even agreed to proceed to trial without formal discovery.
In sum, while we have concluded that a hearing on a motion for speedy trial discharge may not be necessary in all cases, one should have been held in the matter before us in order to determine who was responsible for the inability of Lasker and Morse to receive a trial within the time limits prescribed in rule 3.191. We stress that we do not impute to the state's attorney any purpose to mislead in his communications with the trial judge. This case, however, exemplifies crossed wires terminating in the discharge of persons accused with serious felonies. It is now simply too late to determine whether the Lasker and Morse motions for discharge were well-taken.
The petitions for writs of prohibition are granted and the trial court is directed to enter an order discharging Lasker and Morse. There is no need for us to respond to the contentions based on the constitutional right to a speedy trial and it is not necessary to discuss the implications of the state's failure to file an information until well after the 175-day speedy trial period expired.
The petitions are granted.
RYDER, A.C.J., and LEHAN and FRANK, JJ., concur.